IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT RAYES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-01595-N |
| | § | |
| STANTEC ARCHITECTURE, INC., | § | |
| | § | |
| | § | |
| Defendant. | § | |

## ORDER

This Order addresses (1) Plaintiff Robert Rayes' motion for summary judgment [11], (2) Defendant Stantec Architecture, Inc.'s ("Stantec") motion for summary judgment [20], and (3) Rayes' motion to strike [33]. For the reasons set forth below, the Court grants Stantec's motion for summary judgment, denies Rayes' motion for summary judgment, and grants in part and denies in part Rayes' motion to strike.

### I. ORIGINS OF THE DISPUTE

This case arises from a contract dispute. From August 2006 until May 2014, Rayes worked as Chief Information Officer ("CIO") for SHW Group, a Dallas-based architecture and design firm. Rayes was also a principal and shareholder of SHW Group. On May 23, 2014, Stantec acquired SHW Group. The terms of the acquisition, including the terms governing Stantec's payment to individual SHW Group partners – of which Rayes was one – were memorialized in an Agreement and Plan of Merger (the "Merger Agreement") among the relevant parties.

ORDER – PAGE 1

As part of the merger consideration, Stantec entered into a promissory note (the "Note") with Rayes. Under the Note, Stantec agreed to pay Rayes three separate payments of $204,537.92 each (the "Deferred Payments"), plus applicable interest. Rayes' receipt of the Deferred Payments was contingent on his satisfaction of certain conditions, including (1) not going to work for any of Stantec's competitors for three years after the merger, and (2) not resigning from Stantec except for under certain circumstances set forth in the Merger Agreement. If Rayes did not satisfy the conditions, he would forfeit the remaining Deferred Payments.

On July 25, 2014, the parties to the Merger Agreement entered into an "Amending Agreement" that revised the terms and conditions governing the shareholders' forfeiture of unpaid Deferred Payments. The Amending Agreement replaced section 8.4 of the Merger Agreement to provide additional protections to shareholders, including Rayes. The new section 8.4 ("Section 8.4") sets forth the only way a shareholder may forfeit his or her merger consideration, of which Rayes' Deferred Payments were a part. It states: "In no event shall any Shareholder forfeit his or her Merger Consideration payments that have not yet been paid to the Shareholder as a result of his or her separation from employment service from [Stantec], except as explicitly set out herein." Am. Ag. § 2. It further states:

> In the event of a Shareholder delivering to [Stantec] notice of termination of their employment agreement other than for Good Reason, such Shareholder may be required to forfeit all or a portion of the remaining [Deferred Payments] which have not been previously paid to that Shareholder. The determination of whether or not the Shareholder should forfeit in these circumstances, and the amount of such forfeiture, shall be made by [Stantec]

and the Shareholders' Representative,[1] each acting reasonably and in good faith, solely considering [a list of factors].

*Id.* The Amending Agreement further provided that if, within 30 days of Stantec's receipt of a shareholder's notice of termination Stantec and Simmons were unable to resolve the matter, then either party could demand binding arbitration to resolve the dispute. *Id.*

Rayes worked for Stantec for over a year after the Stantec/SHW Group merger. Stantec thus paid him the first of his three Deferred Payments on May 23, 2015. Soon thereafter, on September 28, 2015, Rayes verbally notified Stantec Senior Vice President Marjorie K. Simmons that he would be resigning from Stantec to accept another position. On September 29, 2015, Rayes emailed his manager to submit his resignation in writing. That same day, Rayes told Simmons that he was committed to accepting the new position, and that he would make up the loss of the Deferred Payments via his compensation in the new role.

In the weeks leading up to his departure, Rayes refused to reveal the identity of his new employer, despite requests from Stantec leaders that he do so. Instead, Rayes revealed only that he would be working as CIO for a Dallas architecture firm. Simmons told Rayes that, based on the information Rayes had shared, she saw no circumstances under which he would receive his remaining Deferred Payments.

At the same time, Simmons and other Stantec leadership determined that all the evidence Rayes provided indicated that he intended to leave Stantec to engage in competitive

---

[1] Stantec Senior Vice President Marjorie K. Simmons served as the Shareholders' Representative. Merger Ag. § 11.2.

employment in violation of section 8.1 of the Merger Agreement. They further determined that Rayes understood that, by resigning from Stantec, he would be forfeiting his remaining Deferred Payments. They also considered the effect Rayes' departure would have on the morale of other key employees. Based on these determinations, Stantec decided that Rayes had forfeited his remaining Deferred Payments.

After Rayes' departure, Stantec learned that Rayes had gone to work for Corgan, one of Stantec's direct competitors. According to Stantec, Rayes' duties as Corgan's CIO are substantially identical to his previous duties as an SHW Group employee, and overlap with some of his previous duties at Stantec.

Rayes now asserts a breach of contract claim, arguing that Stantec has defaulted on the Note. Stantec responds that Rayes forfeited his right to the remaining payments when he left Stantec to work for Corgan. Both parties now move for summary judgment.

## II. THE COURT GRANTS STANTEC'S MOTION FOR SUMMARY JUDGMENT AND DENIES RAYES' MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of

the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, she "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [her] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment by either (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

## B. The Court Grants Stantec's Motion for Summary Judgment

Stantec now moves for summary judgment on Rayes' breach of contract claim [20]. For the reasons set forth below, the Court grants Stantec's motion.

To recover for breach of a contract under Texas law, a plaintiff must show that (1) a valid contract exists; (2) he performed or tendered performance under that contract; (3) the defendant breached the contract; and (4) he has suffered damages as a result of the breach. *Stewart v. Sanmina Texas, L.P.*, 156 S.W.3d 198, 214 (Tex. App. – Dallas 2005, no pet.) (citing *Southwell v. Univ. of the Incarnate Word*, 974 S.W.3d 351, 354–55 (Tex. App. – San Antonio 1998, pet. denied)).  Likewise, a party seeking to recover under a contract bears the burden of showing that all conditions precedent to the other party's performance of that contract have been satisfied.  *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276 (Tex. 1998); *Mensa-Wilmot v. Smith Int'l, Inc.*, 312 S.W.3d 771, 781 (Tex. App. – Houston [1st Dist.] 2009, no pet.).

Stantec contends that Rayes cannot prove an essential element of his breach of contract claim, and that summary judgment in its favor is proper.  The Court agrees.[2]

In relevant part, Section 8.4 permits Stantec to require a shareholder to forfeit his remaining Deferred Payments if either of two conditions occurs:

---

[2] Rayes argues in detail that Section 8.4 is a condition subsequent, not condition precedent, to payment.  Rayes thus claims that Stantec bears the burden of establishing that Section 8.4 was satisfied before it required Rayes to forfeit the remaining Deferred Payments. Assuming without deciding that Section 8.4 is indeed a condition subsequent, the Court nevertheless holds that Stantec has met its burden of showing that Section 8.4 was satisfied.

1.    The shareholder violates his noncompete agreement with Stantec after being given notice of the breach, and fails to cure the breach within 10 days of such notice. Am. Ag. § 8.4(b)(ii).

2.    The shareholder delivers notice of termination of his employment agreement other than for "Good Reason" as defined in the agreements, and Stantec and Simmons, acting "reasonably and in good faith" and considering certain factors, determine that the shareholder should forfeit the remaining payments. *Id*. § 8.4(c).[3]

Both conditions occurred here.  As a result, Stantec acted within its rights when it required Rayes to forfeit his remaining Deferred Payments. Summary judgment on Rayes' claim is thus proper.

*1. Stantec properly required Rayes to forfeit the Deferred Payments under Section 8.4(b)(ii).* – Under Section 8.4(b)(ii), Stantec could require Rayes to forfeit the Deferred Payments if he violated the noncompete agreement and failed to cure his breach within 10 days of receiving notice of it.  Rayes does not deny that he resigned from Stantec to take a job as CIO of Corgan, one of Stantec's direct competitors.[4]  Instead, his argument

_____

[3] The Merger Agreement defines "Good Reason" as (1) "a material reduction in the total compensation and benefits of a Shareholder that is not generally applicable to other employees of [Stantec], other than under circumstances that would give rise to Cause;" (2) Stantec's "material breach of the terms of his or her employment agreement;" or (3) "a relocation of the Shareholder more than thirty (30) miles from their current office location." Merger Ag. § 8.6.

[4] Rayes asserts that, after he resigned, he confirmed his intent to honor his noncompete and nonsolicitation agreements with Stantec.  But Rayes' mere assurance, without proof, that

hinges entirely on the claim that Stantec was required to provide him with *written* notice of any alleged breach. But Rayes misrepresents the language of Section 8.4. Nowhere does that section require Stantec to provide written notice of an alleged breach. Instead, it merely requires notice – which Rayes received. Simmons informed Rayes that she could not determine the disposition of his remaining Deferred Payments without knowing who his new employer would be, thus implying that if Rayes went to work for a competitor, he would forfeit the payments. And weeks before Rayes' departure, Simmons told him that based on the information he had shared, she saw no scenario under which he would receive his remaining payments.

Stantec has thus satisfied its burden of showing that no evidence supports an essential element of Rayes' breach of contract claim – that Stantec breached the relevant agreements. *See Celotex*, 477 U.S. at 322–25. And Rayes offers no evidence to the contrary. As a result, no genuine dispute of material fact exists regarding whether Rayes violated the noncompete, and whether Stantec fulfilled its obligation to provide Rayes with notice and an opportunity to cure his breach. Summary judgment is thus proper on Rayes' breach of contract claim.

**2. Alternatively, Stantec properly required Rayes to forfeit the Deferred Payments under Section 8.4(c).** – Under Section 8.4(c), Stantec could require Rayes to forfeit the Deferred Payments if he delivered notice of termination other than for "Good Reason," and Stantec and Simmons, acting "reasonably and in good faith," determined that he should

---

he did not intend to violate his obligations is insufficient evidence that he did in fact honor the agreements – or that Stantec violated Section 8.4 when it terminated Rayes' Deferred Payments.

forfeit the payments. Rayes concedes that he did not leave Stantec for "Good Reason" as defined in the Merger Agreement. The question before the Court, then, is whether Stantec and Simmons acted "reasonably and in good faith" when they required Rayes to forfeit his remaining payments. The Court holds that no genuine dispute of material fact exists regarding whether they did.

Section 8.4(c) required Stantec and Simmons to consider the following factors when determining whether to require Rayes to forfeit his remaining payments:

1.   Whether Rayes' departure would have a "material adverse impact" on Stantec or Stantec's ongoing client relationships, employee morale, or significant integration milestones, or on the value of Stantec's investment. Am. Ag. § 8.4(c)(i).

2.   Whether Rayes had a stated intention, or a preponderance of the evidence indicated his intention, to breach his noncompete or nonsolicitation obligations following his departure from Stantec. *Id*. § 8.4 (c)(ii).

3.   Whether Rayes had "defamed or maligned" Stantec's reputation to certain groups in connection with his departure in a way that had a material adverse impact on Stantec's investment. *Id*. § 8.4 (c)(iii).

In concluding that the above factors justified requiring Rayes to forfeit his remaining Deferred Payments, Simmons and other Stantec representatives considered the information Rayes had provided them; his refusal to identify his new employer; other facts indicating that his new employer was Corgan; and the impact his departure would have on Stantec's

business, including the departure of certain key employees.[5]  Stantec's proffered evidence is sufficient to satisfy its burden of showing that no evidence exists to support an essential element of Rayes' claim.  *See Celotex*, 477 U.S. at 322–25.

Again, Rayes offers no evidence to the contrary.  Instead, he argues that Stantec has not shown sufficient evidence of material adverse impact on, among other things, employee morale.  But whether there is sufficient evidence of material adverse impact to survive a summary judgment motion is beside the point.  The key question is whether Stantec acted reasonably and in good faith when it decided that, among other factors, the material adverse impact of Rayes' departure justified requiring him to forfeit his remaining Deferred Payments.  Rayes has submitted no evidence contradicting Stantec's assertions that it did.  As a result, no genuine dispute of material fact exists regarding Rayes' claims, and summary judgment in Stantec's favor is proper.

### C. The Court Denies Rayes' Motion for Summary Judgment

As explained above, Stantec has satisfied its burden of demonstrating that no genuine dispute of material fact exists with respect to Rayes' breach of contract claim.  The Court therefore denies Rayes' motion for summary judgment [11].

---

[5] After Simmons informed certain Stantec employees of Rayes' resignation, Derk Jeffrey, a former SHW Board member and Senior Principal at Stantec's Arlington, Virginia office, informed Simmons that he believed Rayes' departure would encourage other former SHW partners to leave Stantec as well.  Jeffrey specifically cited two partners whom he believed were at risk of departing.  One of those partners attempted to quit, but Stantec was able to retain him.  The other partner did in fact leave Stantec.

ORDER – PAGE 10

### III. THE COURT GRANTS IN PART AND DENIES IN PART RAYES' MOTION TO STRIKE

Rayes objects to and moves to strike certain portions of the affidavit and supporting exhibits Simmons filed in opposition to Rayes' motion for summary judgment and in support of Stantec's motion for summary judgment [33]. The Court rules as follows on Rayes' objections:

1.    The Court overrules Rayes' objections to Paragraphs 4, 5, and 22. The statements were not offered for the truth of the matters asserted therein and thus are not hearsay.

2.    The Court overrules Rayes' objections to Paragraph 6. The statements are not offered for their truth and are thus not hearsay. The statements also are not offered to prove the contents of the agreements they reference and therefore do not implicate the best evidence rule.

3.    The Court overrules Rayes' objections to Paragraph 12. Simmons established sufficient foundation for her statements, and the statements were not offered for the truth of the matters asserted therein.

4.    The Court sustains Rayes' objection to Paragraph 16. The portions of Exhibit 4 set forth in Paragraph 16 that Rayes did not create are inadmissible hearsay.

5.    The Court overrules Rayes' objections to Paragraph 18. The challenged statements are not offered for the truth of the matters asserted therein, but for their effect on Simmons.

6.    The Court sustains Rayes' objections to Paragraph 25.  The challenged

statements are inadmissible hearsay.

The Court thus grants Rayes' motion to strike Paragraphs 16 and 25 and denies Rayes'

motion to strike Paragraphs 4, 5, 6, 12, 18, and 22.

### CONCLUSION

The Court  grants Stantec's motion for summary judgment.  The Court denies Rayes'

motion for summary judgment and grants in part and denies in part Rayes' motion to strike.


Signed March 27, 2018.


_____
David C. Godbey
United States District Judge


ORDER – PAGE 12